In re QUIGLEY.

(Supreme Court, General Term, Second Department.    March 8, 1895.)

1. POLICE JUSTICE—REMOVAL—GROUNDS.
    A police justice will be removed on the ground of misconduct in office where it appears that his judicial acts were intentional violations of the laws governing magistrates, or were in disregard of legal rules.

2. SAME—PROOF OF MISCONDUCT.
    A police justice is guilty of misconduct for which he should be removed where it appears that during a strike of the employés of a street railway company he discharged strikers who were arrested and brought before him, charged with throwing stones at the cars and assaulting the main operator of the cars, notwithstanding the evidence against them, and stated that the strikers had a perfect right to take men off the cars if they could do so in an orderly way.

Proceeding to remove from office James F. Quigley, a police justice of the city of Brooklyn, on charges preferred by the mayor, for partiality towards strikers when arraigned for assaulting policemen and for stoning cars during the strike of the Knights of Labor against the Brooklyn trolley railroad companies.    Judgment overruled.

Argued before BROWN, P. J., and DYKMAN and CULLEN, JJ.

Asst. Corp. Counsel Yonge, for the prosecution.

A. H. Dailey and A. D. Bell, for Police Justice Quigley.

BROWN, P. J. (orally).    When the court rendered a decision in the Watson case it considered the rules that should apply in the case.    These rules were that the court thought that the evidence against the accused should show that the judicial acts were corrupt, or that there was intentional violation of the laws governing a magistrate, or that there was a disregard of the legal rules that amounted to legal misconduct.    Applying the rules laid down in the Watson case, there was evidence of judicial misconduct found, but on the whole the court was unable to say that there had been an intentional violation of duty.    In applying the same rule in this case the court is led to a different conclusion from that which was reached in the Watson case.    The court still holds that a magistrate should not be removed because the court disagrees with him in the construction of the law.    We recognize the fact that we must give great latitude to the magistrate in the administration of the law, and must recognize the discretion the law gives to a magistrate on matters of law.    In reviewing this case we find not only one or two instances in which the accused has violated the laws,—instances in which we disagree with him,—but we also find in the given period from the inception of the trials of cases that arose out of the violence that attended the strike until February 6th, when he was first notified that this action would be instituted, a uniformity of conduct going to show that he intended to violate his duty.    And we find a total disregard of inferences that should have been drawn from the evidence in many cases that were before him.

We do not propose to take up all the cases that came before the magistrate in the period mentioned, but will consider two or three of them, which will indicate his intentions as a magistrate.    The first case is that of Acker, who was charged with throwing a stone at a car and hitting a passenger in the back.    The police officer who made the arrest testified at the trial of Acker that he saw the assault committed, so far as the throwing of the stone was concerned, but in the evidence there was some difference of testimony as to whether the passenger was struck.    The stone was thrown, and that was the violation of the law.    It made no difference whether the passenger was struck with the stone or not, as far as the question of holding Acker for trial was concerned.    Yet Acker was discharged by the magistrate.    It was the same with the case of Connolly, who was arraigned on a charge of assaulting a motor man.    Although the motor man claimed that he had been treated with violence, yet, as no corroborative evidence of his statement was adduced, the defendant, Connolly, was discharged.    The only other case the court will cite is that of Mullen.    There was no doubt that two men had been taken from a car to Odd Fellows' Hall on Palmetto street.    It was proven, not only by the police officers who made the arrest, but by others, that Mullen was in the hall where he was arrested, and also that he was in a closet near the door of the hall.    The case was tried and Mullen was discharged.    He had testified in the case that he was not in the hall when he was arrested.    This was palpably untrue.    There was no excuse for the discharge of the defendant.    By referring to the

remarks of the magistrate we find that they were not only improper, but that they tended to the encouragement of disorder prevailing in the community. When we consider the time this was done, it was a perversion of justice. He said to those men that they had a perfect right to take the men off from the car if they could do so in an orderly way. "There is no law in this state," he said, "that prevents you from taking those men from the car." The men, on the contrary, had no right to step upon a car for that purpose. It was the same as though the magistrate had said to the accused and to their companions that they could be themselves the judges of the law. Again, we find a fact of still greater significance in that in the previous period of time when the strikers' cases were considered, up to February 6th, only one prisoner, and that one in a case of minor importance, was held by the magistrate. All the others were discharged or were adjourned from time to time. One other case the court will refer to that is in the same line with those quoted. A man was arraigned before the magistrate charged with assault in the third degree. The magistrate had jurisdiction of the case. There is no doubt of that. He had exclusive jurisdiction, but when the testimony was taken it was found that the assault was of such an aggravated character that the magistrate decided that the accusation should be of assault in the second degree. The remarkable feature of this decision was that although the magistrate said the assault was in the second degree the case was immediately adjourned, and it has not yet been disposed of. We would not pay so much attention to this case if we did not take the other cases into account, and consider the fact that the disposition of the cases prior to February 28th indicate an intention on the part of the magistrate to violate his official duty. Looking over the whole ground in reference to the partial discharge of the magistrate's duty, with great regret we have decided that he should be removed from office. All concur.